Good morning distinguished members of the court. My name is Chip Goss. I represent appellants Ricardo Sarmiento and Elizabeth Gonzalez in this matter. The issue before this court is whether a reasonable jury could conclude from the forensic fire evidence presented by Mr. Sarmiento and the totality of Investigator Mueller's dishonest conduct. The key evidence used by Investigator Sarmiento was false, that Investigator Mueller knew it was false, and given that forensic evidence, he should have known that Mr. Sarmiento was innocent. Do we know what prompted the reinvestigation? What prompted the reinvestigation was And when we ask questions, just as a threshold matter, we're asking what's in the record. What is in the record that prompted the reinvestigation According to the detectives, which is in the record, the reinvestigation report was an inquiry from the FBI that was initiated by Ms. Gonzalez that another youth had confessed to the incident approximately a year after Mr. Sarmiento's conviction, and she had taken this to the FBI apparently, I believe, who then contacted the county. Hold on just a second. Everybody in the courtroom who has a cell phone, take it out of your briefcase, turn it off. If another cell phone rings while we're in session, we get it. Anybody not understand that? Sorry for the interruption. I believe I answered the question. Was that sufficient? That's fine. Mr. Sarmiento, and I'll refer to Mr. Sarmiento and Ms. Gonzalez as just Sarmiento for the purposes of this argument, asserts that the lower court erred in three ways. First, the court erred in finding no cognizable injury under Section 1983 and using the same analysis to dismiss the State law claims of emotional distress, alienation of affections, and negligent supervision. The lower court ruled because there was no injury that the State law claims could not survive. This was error because the court applied the wrong standard. Secondly, the court erred in determining that there was probable cause for this prosecution. The first doesn't matter if the second, if, in fact, they were right about the probable cause, right? Pardon me? The first doesn't matter if they're right about the probable cause, if the courts are right about the probable cause. That is correct. If there, in fact, is probable cause from the evidence presented and in this case, the important point is the untainted evidence. The evidence that Mr. Sarmiento has not proven is false and the evidence that Mr. Sarmiento has not proven is tainted by reckless omissions and deliberate dishonesties. The third way the court What are the deliberate dishonesties? The deliberate dishonesty is the conduct of Investigator Mueller, which really is a totality of conduct. First, that he intentionally disregards the forensic evidence which tells him, which tells any reasonable fire investigator that this key eyewitness is false. It is not possible for this eyewitness to have started the fire. Perhaps in the detail of which window, which basket we're talking about. But why does that leave anybody with a clue that everything he says is false? Did I have the wrong basket? Well, as a plaintiff's expert points out, as Mr. Sarmiento's fire expert points out, the problem is, an Investigator Mueller admits that the key eyewitness did not see the fire start. Once you accept that conclusion, then you have to say, well, then how did the fire start in such a manner that the key eyewitness could possibly have seen what he says he saw? At some point in either the initial investigation or the reinvestigation, didn't your client make a statement that he had thrown a match? That is correct. I would That somebody had seen him do it? He did not make that statement. He made the statement that he had thrown a match. This was a jailhouse confession. He had been incarcerated for over a year. He maintains he was told, unless you confess, we will not continue to reinvestigate this case. The only way you can get out is if you give us some kind of confession. More importantly, that is evidence that is subsequent to the prosecution and conviction. It is not really before this Court at this time. What this Court is concerned with is, what did Investigator Mueller know at the time he submitted his police report intending to have Sarmiento prosecuted, convicted and incarcerated? What did he know? That's a question of fact for the jury. Who did the investigation after the report of another involvement? King County conducted the investigation. Two detectives, Detectives Hall and Eggert. Was Mueller involved? Mueller was not involved. He was requested to provide a statement. He refused until he could provide a written statement. And the decision to reinvestigate, was that prompted by anything done by Sarmiento? Again, it was Ms. Gonzalez that took the youth's confession to a police agency. Again, I believe it was the FBI. They contacted King County to suggest that Sarmiento... Had the other person's claim, wasn't it? Correct. Hadn't he said from the outset that he had thrown a match at a tennis shoe or something? No. He had said to other students at the junior high school that he did it. There's no specific facts involved in that statement. It was a rumor. Investigator Mueller contacted him, interviewed him. He said, oh yeah, I admit that I did it, but I was only joking. And here's a friend that was with me. I wasn't even there. We now know in hindsight that he was there. And in fact, so was the friend in the locker room. Getting to the probable cause argument, the difficulty with the lower court's decision of probable cause is that it relied upon the same evidence that Sarmiento proves is forensically false. What is key to this is that... But you have, your burden is more than to show that it's false. It's to show that it was either deliberately false or almost deliberately false, right? We can talk in a minute about which, but... If you're saying that I must show that Investigator Mueller knew the information was false, I agree. Yes. And I would suggest from the evidence from Mr. Sarmiento... You're arguing for a Frank standard, right, which is not exactly new. It's a little less than that, right? Correct. I'm arguing for a Frank standard, that there's a substantial showing of a deliberate dishonesty or reckless disregard for the truth of the evidence. And the forensic evidence in this case established this was a slow-burning fire. It burned for 15 minutes. It started not where the eyewitness said, but at least two baskets down. And there is no possible way, forensically, according to Mr. Sarmiento's expert, to justify the eyewitness and the forensics. And once you admit that inconsistency... And Mueller was just a crummy investigator. Well, I would suggest that the totality of his conduct following his investigation suggests, in fact proves, that it was more than that. He knew, in fact he admitted in deposition, that the key eyewitness did not see this fire start. The record is completely absent of any indication... He didn't say he saw the fire start, did he? Pardon me? Did the key eyewitness say he saw the fire start as opposed to he saw the guy set the fire? I would suggest that that's a distinction that makes no difference. I mean, the fact that he said he saw Mr. Sarmiento starting a fire within two to five minutes of the alarm going off is physically impossible from the forensic evidence. And so Mr. Mueller could have been just a lousy fire investigator. Except if he was just a lousy fire investigator, then he wouldn't have been bribing witnesses and naming Mr. Sarmiento... Any rewards. I gather that's a fairly standard thing. Are you saying any reward is a bribery of a witness? I am not suggesting that. And I would agree that that conduct in and of itself probably would not rise the level of action. However, when he goes to court, when he does not tell the prosecutor the problems with this key eyewitness, and there's no evidence in the record, in fact, King County is... Probably the first cop that ever did that. Pardon me? He said he's probably the first cop that ever did that. Well, clearly he's not the first cop that ever did that. Did you ever prosecute yourself? I did prosecute for a very short time, yes. And every police officer is always absolutely honest with you, right? Well, in this particular... No. Correct. Correct. They may have known things that they did not tell the prosecutor. But what we know from Smitty v. Varney is that that's liability that attaches to the investigator. If these are material facts that lead to false evidence supporting a conviction, the investigator is liable. And King County cannot hide behind a shield of immunity. Give us your best false facts and why Mueller either knew or should have known or just deliberately disregarded proof to the contrary. The best false fact is that this fire started in a place other than the witness claimed to have seen Sarmien to ignite it. We're talking about trash cans that were how far apart? We're not talking about trash cans, but yes, we're talking about baskets probably two to three feet. And how far away did the witness say he was? The witness said I believe he was about 10 feet away when he witnessed this. The key, however, is that from the forensic fire evidence, those two statements cannot be reconciled. And that fact, the fact that they cannot be reconciled was possible. Was it possible that Sarmiento put a match into the second basket but it fell down? These are mesh things, right? Well, in fact, it is possible. However, Sarmiento's expert talked about that and said it was entirely unlikely. Moreover, if indeed this was what's called fall down, if he did light an upper basket and it fell down, again, not time enough for this fire to burn to the extent it burned, given the scientific evidence. Okay, but maybe this is why I keep not understanding. Maybe Mueller's not a scientist. He's just a bad investigator. He's representing himself as a scientist. He's acting as an expert. What was his first fire investigation? It was his first fire investigation in terms of criminally interviewing witnesses, determining arson. He had done several fire origins interviewing witnesses. Correct. Correct. I see that my time is up. Thank you. Thank you very much for your argument, Mr. Goss. Mr. Blood? Thank you, Your Honor. Tim Blood on behalf of the FWs in this matter and Craig Mueller. Hang on just a second. I'm sorry. Judge Thompson, did you have any questions for Appellant's counsel? No, thank you. Okay. I'm sorry. No. And sitting at counsel's table is Craig Mueller, fire investigator for the King County King County. Good morning. Just a couple of corrections of the record that came up in oral argument. First of all, there was the suggestion that Investigator Mueller refused to provide a statement during a reinvestigation. None of this is material to the issues before this Court today.  There's no evidence in the court. Was he involved in the reinvestigation? He was interviewed during the reinvestigation, but that was the extent of his involvement. Did he cooperate with the persons in charge of the reinvestigation? Absolutely. And do you know if he was consulted about the decision not to oppose a motion for new trial? I can tell you there's nothing in the record about that. And how about about the decision to dismiss the charges? I can tell you there's nothing in the record about that. Thank you. I just want to highlight a couple, three points for the Court. First of all, there's the issue of what law applies in this matter. All of a sudden, on this appeal for the first time, Mr. Sarmiento is arguing, oh, Devereaux, Smitty v. Barney, those aren't the standards. It's Franks v. Delaware. And Franks v. Delaware. That ultimately has to be right, doesn't it? Why shouldn't it be right? Why should there be a difference between a situation in which a officer gives false information in a warrant or gives false information which leads to the instigation of a prosecution? I mean, what would be a rationale for a different standard? Well, I'll start out with just what I understand the law to be on those issues. One is that Franks v. Delaware, as far as I understand, applies only in the context of search warrants. Well, that's what the case is about. There's actually another case about a coroner's investigation. But the rationale has to carry over. How would you distinguish them? Well, I think it gets to the material omissions element, which seems to be a basis under Franks v. Delaware that a warrant could be, portions could be excised and things like that. When you're talking about a police investigation, the notion of material omissions, well, I don't know. I think it would be very easy to not put everything into a police report that maybe came up in the course of an investigation. And this investigation is a perfect example. There were tens and tens of pages of police report. And the notion that an investigator could get whacked for accidentally, or I guess the standard would have to be annoying or reckless or intentional, leaving out a material omission, leaving something out. I don't know. I don't know if it makes a difference. It seems it's a difference in terms of what the case law says. And honestly, I've not gone through to think of all the rationales behind the history behind Franks v. Delaware versus Smitty v. Barney and Devereaux. Mr. Black, excuse me. No, go ahead. Go right ahead, Judge. Suppose we were to apply a Franks standard. Was there a material omission? There was not. Plaintiff's best argument, as I understand it today, is that there's a focus on the forensic evidence. And this notion that the eyewitness, Tony Scoccolo, saw Mr. Sarmiento lighting this column of baskets in a location different than where forensically the fire actually started. All of this information was shared with the prosecutor and therefore the criminal defendant before the first trial. So what plaintiff has done is confused opinions of his expert, inferences that that particular expert is drawing from the facts as set forth by Mr. Muller and saying, those are really new facts and facts that were hidden from the prosecutor originally. It's apples and oranges. There was no additional evidence, exculpatory or otherwise, upon which plaintiff's expert, Mr. Schaefer, has based any of his opinions. And so it's simply the inferences that are going to be drawn from those facts that vary between what Mr. Muller and expert investigator Tim Riddle on behalf of King County provided versus what Mr. Schaefer says. And what Mr. Schaefer essentially says implicitly is, hey, if you disagree with my opinions, you must be either lying or operating in reckless disregard of the truth. It's a leap that cannot be made on this evidence. I'm sorry. You want me to speak up? No. Exactly what? No. In fact, it made no conclusion on who was, who actually committed this arson. The state ultimately on the record, it shows, dismissed it without prejudice with the idea, obviously, that it might choose to refile against Mr. Sarmiento, but never did so. The record says nothing again about whether Mr. Muller was a part of any of that. Well, was there a conviction of another person? Oh, no. No. The evidence shows that Mr. Kling in the reinvestigation, again, respectfully, none of this I believe is legally relevant or factually relevant to the legal standards before the court, because the issue is what Mr. Muller knew at the time he presented his materials to the prosecutor. But in the reinvestigation, the evidence showed that Mr. Kling, some 20 minutes before Mr. Sarmiento was down there, threw two matches, neither of which there's any evidence that either of them started anything on fire, into a tennis shoe several feet away from the column of baskets. What Mr. Sarmiento admitted during the reinvestigation was, oh, well, first of all, he said that I was there at that very column of baskets and I threw a match in and maybe by accident I did start this fire. And it is true, as his counsel indicates, he's now saying, oh, I was promised things and that's why I said that, even though during the reinvestigation on tape he said no threats or promises of any kind have been made to me. I have no other areas that I wish to address the court on unless the court has some questions. Judge Thompson? No, thank you. We would ask that this Court affirm Judge Zillai's opinion below. Thank you for your argument. Thank you both sides for their argument. The case just argued will be submitted for decision.
judges: Thompson, Hawkins, Berzon